**NAPOLEAN ROACHE, Petitioner,**

**v.**

**PELE and EASTER UIA, Respondents.**

High Court of American Samoa
Trial Division

CA No. 06-03

March 18, 2003

Before RICHMOND, Associate Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

OPINION AND ORDER

Respondents Pele Uia ("Pele") and Easter Uia (together "the Uias") initiated this small claims action in the District Court to claim a refund of $1,400 they paid to Petitioner Napoleon Roache ("Napoleon") towards purchase of a motor vehicle. Napoleon counterclaimed in the District Court for his costs of repairing the vehicle after its return by Pele and a payment due under the purchase contract. At the District Court trial, but not in this Court, Napoleon also sought refund of his cost of roundtrip airfare to defend against the refund claim and prosecute the repair cost claim. The District Court denied Napoleon's counterclaim and, after holding that $300 per month was the fair value of Uias' use of the vehicle, ordered Napoleon to refund the balance of $800 to the Uias. Napoleon appealed to this Court for a trial *de novo*, in accordance with A.S.C.A. § 43.0421. Trial *de novo* was held on February 28, 2003. Napoleon and Pele were present and testified.

## Findings of Fact

Despite the witnesses' mutual recriminations muddying the waters, the essential material facts are clear.

On September 23, 2002, the Uias purchased a 1992 Toyota Camry

station wagon from Napoleon. The contract established a purchase price of $10,500 to be paid in 15 monthly installments of $700 each, payable on the third day of each month, beginning October 3, 2002. The vehicle was sold in an "as is" condition. The Uias made the first two payments on October 2 and November 2, 2002. However, on November 29, 2002, the Uias returned the vehicle to Napoleon, because of defects in its condition when the Uias took possession on September 23, 2002, and Napoleon's failure to correct the defects. Napoleon accepted return of the vehicle.

The CD system in the vehicle did not properly work; the brake system did not function without adding brake fluid every other day; and after an earlier accident, undisclosed at the time of sale to the Uias, the windshield had been replaced in a shoddy manner, allowing water to enter the interior through a gap between the windshield and roof. Pele sought Napoleon's attention to these problems with the vehicle, on the assumption Napoleon was responsible for correcting them. Pele left numerous unreturned telephone messages for Napoleon. However, he was able to personally contact Napoleon on occasion, but Napoleon gave him the proverbial runaround when they met and, in any event, did nothing to constructively address the problems.

Though not specifically cited by Pele when the Uias returned the vehicle to Napoleon, there were other defects at the time of sale. The right front door lock, left front seat movement mechanisms, and air conditioning system were defective; the colors of the dashboard and rest of the interior were not the same; and various exterior dents also existed. However, except perhaps for the air conditioning system, these defects were readily discernible to the Uias when they took possession of the vehicle.

While they had possession of the vehicle, the Uias also added to the vehicle tinted windows, four new tires, and rear mudguards at a total cost of $379.95, but the Uias did not include these expenditures in their small claims demand.

After regaining possession of the vehicle, Napoleon expended approximately $1,480.00 in repairs, including the defects cited by Pele as reasons for returning the vehicle. Though Napoleon claimed the Uias abused the vehicle while they used it, the repairs were made to defects existing at the time of sale.

The reasonable remaining life expectancy of a 1992 vehicle is approximately five years.

## Conclusions of Law

■■■ Napoleon was certainly aware of both the evident and hidden defects in the vehicle at the time of sale to the Uias. He deliberately chose not to reveal the hidden defects at that time. The hidden defects were material facts, which Napoleon had a duty to disclose to the Uias. *See Hill* v. *Jones*, 725 P.2d 1115, 1118 (Ariz. 1986) (citing RESTATEMENT (SECOND) OF CONTRACTS § 16 (1981)); *see also Am. Samoa Gov't Employees Fed. Credit Union v. Sele*, 28 A.S.R.2d 21, 23 (Trial Div. 1995) (defining fraud as anything calculated to deceive, including suppression of the truth). Although the Uias agreed to purchase the vehicle "as is," Napoleon's intentional misrepresentation of known hidden defects gave the Uias justification to return the vehicle and terminate the contract without liability for the purchase price. *See Hill*, 725 P.2d at 1118; RESTATEMENT (SECOND) OF CONTRACTS § 164.

The Uias did have use of the vehicle for approximately two months, and Napoleon is entitled to receive reasonable compensation for this period of time. Given the purchase price of $10,500 and a reasonable remaining life expectancy of five years, the monthly fair value of use is approximately $175.00, providing a fair total use value of $350.00 for two months.

However, this amount is offset by the Uias' expenditure of $379.95 in improving the vehicle, and unless Napoleon's counterclaim is valid, the Uias' claim for refund of the two monthly payments, totaling $1,400.00, is not subject to any reduction.

Napoleon expended approximately $1,480.00 for repairs of the vehicle after he regained possession. However, this expense principally corrected defects existing when the Uias took possession of the vehicle. None of these repairs are traced to the Uias' use of the vehicle. The evidentiary support for Napoleon's counterclaim is lacking.

Accordingly, we conclude that Napoleon takes nothing by his counterclaim against the Uias, and that the Uias are entitled to a refund from Napoleon of the full amount of $1,400.00 paid on the purchase price of the vehicle.

## Order

Napoleon's counterclaim against the Uias is dismissed. Napoleon shall pay the Uias $1,400.00, plus court costs of $15.00, a total of $1,415.00. The Clerk of the Court shall pay the $815.00 deposited by Napoleon in the registry to the Uias. Napoleon shall pay, within 14 days of entry of this judgment, the balance of $600.00 to the Clerk of the Court, who shall disburse this amount to the Uias. Interest on any portion of the

unpaid $600.00 balance of the total judgment not paid within the 14-day period shall accrue at 6% per annum until the judgment is paid in full. It is so ordered.